Filed 3/7/24  Lopez v. Landscape Development CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BIELMAN LOPEZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LANDSCAPE DEVELOPMENT, INC., <br><br> Defendant and Appellant. | F085676 <br><br> (Super. Ct. No. BCV-21-102890) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Musick, Peeler & Garrett and Cheryl A. Orr; Skane Mills and Joel P. Glaser; Ogletree, Deakins, Nash Smoak & Stewart and Lyne A. Richardson for Defendant and Appellant.

Moss Bollinger, Dennis F. Moss, Jeremy F. Bollinger, Ari E. Moss and J. Anthony Flores for Plaintiff and Respondent.

-ooOoo-

Appellant Landscape Development, Inc. (Landscape) appeals from an order of the superior court in favor of respondent Beilman Lopez. In the order, the court found Landscape had materially breached the parties' arbitration agreement due to its failure to timely pay arbitration fees as required by statute, authorized the withdrawal of Lopez's claim from arbitration, and awarded Lopez monetary sanctions in the amount of $3,770. We reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Commencement of the Lawsuit and Demand For Arbitration

Lopez was hired as an employee of Landscape in July 2018. In connection with his employment, Lopez signed Landscape's standard arbitration agreement that required the parties arbitrate any employment-related claims covered by the agreement.

On December 10, 2021, Lopez filed a complaint in the Kern Superior Court for civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA). Lopez brought suit on his own behalf and that of "similarly aggrieved employees and the State of California," and alleged Landscape violated various Labor Code statutes and Industrial Welfare Commission wage orders.

On June 21, 2022,[1] Landscape's counsel demanded Lopez dismiss his complaint and all class claims, and submit his individual claims against Landscape to binding arbitration. On July 22, Lopez's counsel responded to the demand and agreed to pursue Lopez's individual claims in arbitration, but declined to dismiss the complaint or Lopez's representative PAGA claims.[2] Not satisfied with the response, on August 3, Landscape brought a motion seeking to compel arbitration of Lopez's individual claims, and the dismissal of Lopez's representative PAGA claims.

---

[1] All dates referenced herein are to 2022 unless otherwise noted.

[2] In his response to the arbitration demand, Lopez's counsel clarified Lopez's complaint only contained a single PAGA cause of action and no class claims, but stated Lopez would include any individual claims for Labor Code violations in the arbitration.

Approximately two weeks after Landscape filed its motion to compel arbitration, Lopez initiated arbitration proceedings. Thereafter, the superior court formally compelled arbitration of Lopez's individual claims (including individual PAGA claims) and stayed the action as to his representative PAGA claims.

## II.    Arbitration Proceedings

Lopez initiated the arbitration on August 16 by paying the Judicial Arbitration and Mediation Service (JAMS) a nonrefundable filing fee of $400. Lopez's counsel received confirmation of the payment via an email from JAMS's billing administration. Attached to the email was a pdf copy of a JAMS account statement reflecting the payment.

On August 31, JAMS's billing administration sent an email to Landscape's attorneys and copied Lopez's counsel on the email. The email read, in part: "Please find your Deposit Request attached for the [*Lopez v. Landscape*] matter. Please note that payment is due upon receipt." A pdf copy of the deposit request was attached to the email and required a $1,350 nonrefundable filing fee. On September 6, Landscape timely paid JAMS the requested deposit of $1,350.

On September 22, JAMS confirmed the commencement of arbitration in a written notice to all parties' counsel. A pdf copy of the notice titled "Commencement of Employment Arbitration" (some capitalization and boldface omitted) (notice of commencement) was attached to an email sent by JAMS to all parties' counsel. The notice of commencement included, without limitation, the names of seven proposed arbitrators, a fee schedule for each, and documents advising the parties of various JAMS policies. Each fee schedule included with the notice of commencement read, in part: "All fees are due and payable in advance of services rendered and by any applicable due date as stated in a hearing confirmation letter."

On October 7, the parties, through their counsel, notified JAMS of their selected arbitrator.

3.

On October 13, JAMS issued, and uploaded to its online portal, a notice titled "Appointment of Arbitrator" (notice of appointment) stating the parties' chosen arbitrator had been appointed to the case. In a declaration to the superior court, Lopez's counsel said, "the Parties" were notified of the uploaded document by an email received from JAMS with the subject title "JAMS Access New Notifications." However, the email attached as an exhibit to the declaration was addressed only to Lopez's counsel. The email read, "Dear [counsel for Lopez], [¶] Here are all of the new Notifications within JAMS Access. Click here to login to JAMS Access to see the Notifications."[3] The email continued, in relevant part: "Notice of Appointment.pdf is uploaded to case [*Lopez vs. Landscape*,] #5210000157 by [JAMS's business manager]."

The notice of appointment included a paragraph that read: "The paying party has been billed a preliminary deposit to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls. An invoice for this deposit is attached. Payment is due upon receipt. Upon receipt of payment, a Preliminary Arbitration Management Conference Call will be scheduled with the Arbitrator." Below the notice of appointment's author's signature is the notation "Enclosure." Lopez's counsel averred that a deposit request for $12,000 issued to Landscape's counsel (the subject invoice) was attached to the notice of appointment.

On November 2, JAMS sent counsel for all parties an email that read, in part: "I am following up on the initial retained payment for the above referenced matter. JAMS

---

**3** According to JAMS's official website, "JAMS Access" is "a secure, online case management platform provided to JAMS clients at no charge" and is described, in part, as follows: "Our user-friendly interface streamlines the filing and service of documents and facilitates communication among JAMS neutrals, attorneys, parties and case managers[,]" and invites users to "[c]reate your account now at access.jamsadr.com." (Boldface omitted.) (<https://www.jamsadr.com/jamsaccess> (as of Mar. 7 2024).) A party receiving notification from JAMS Access that a document has been uploaded to the online portal must log in to the service to view the notification. (<https://www.access.jamsadr.com/news-insights/resources/user-guide-neutrals> at "Frequently Asked Questions (FAQ)" (as of Mar. 7, 2024).)

has yet to receive payment for initial retainer from [ Landscape]. I have attached a copy of the [subject invoice] dated [October 13] for your consideration. Please submit payment as soon as possible .…" Attached to the email was a copy of the subject invoice. The subject invoice contained a line that read, "Billed To" Landscape's counsel and beneath which was the firm's Las Vegas, Nevada address and the case name.[4] Below the case name, it read "Representing: Landscape Development, Inc."

In a declaration, Landscape's counsel averred the November 2 follow-up email "was the first time [he] received the [subject invoice] for the arbitrator's fees."

On November 10, JAMS sent an email to all counsel asking the parties to "please provide … the status of payment for the [subject invoice] regarding the above referenced matter." Landscape's counsel replied, "Who has not paid? This email was vague." JAMS replied, in part: "My apologies for the confusion. I followed up on the previous email thread which indicated that [Landscape] has not paid the [subject invoice] for this matter. [¶] Currently, JAMS has not received payment from [Landscape]." Landscape's counsel responded, "Please send me the invoice and I will follow up."

On November 11, JAMS sent another email to Landscape's counsel that read, in part: "Attached please find a copy of the [subject invoice] dated [October 13] for your consideration. Please submit payment as soon as possible .… [¶ … ¶] Once we receive[] payment for [the subject invoice], we will proceed with scheduling the Preliminary Arbitration Management Conference Call with [the arbitrator]."

Also on November 11, a representative of Landscape emailed JAMS and requested JAMS bill the subject invoice to Landscape (rather than Landscape's attorneys) to comply with its accounting department's requirements. The representative wrote, "We

---

**4** Although addressed to the firm's Las Vegas address, there is no evidence in the record that the subject invoice was sent to Landscape or its counsel by other means (e.g., by mail or delivery). Landscape's counsel averred the firm's Las Vegas address was never used on any of the pleadings filed in this matter and denied receiving the subject invoice at the Las Vegas office, at any address used on pleadings, or otherwise, prior to November 2.

will process the payment when received." In response that same day, JAMS responded by requesting Landscape's insurance adjustor's name and contact information and stating it would update the subject invoice once the information was received.

On November 17, JAMS again requested the insurance adjustor's contact information from Landscape. That same day, Landscape's counsel's office forwarded the requested information to JAMS.

### III. Lopez Elects to Withdraw From Arbitration and Then Landscape Pays the Subject Invoice

On November 17, Lopez's counsel contacted JAMS and confirmed that the subject invoice had not yet been paid by Landscape.

On November 21, at 4:13 p.m., Lopez's counsel emailed JAMS and Landscape's counsel and advised them Lopez "is electing to withdraw his claim from arbitration … due to … Landscape['s] … material breach of the arbitration agreement," pursuant to Code of Civil Procedure section 1281.97, subdivision (b)(1).[5] At 5:20 p.m. that same day, Landscape's counsel wrote JAMS and asked, "When can we expect the revised invoice in the name of Landscape Development, Inc.?"

An updated invoice was sent the following day, November 22, and was billed to Landscape's insurance adjustor. Although the revised invoice was still not billed directly to Landscape, Landscape paid it on November 23 by check dated November 21. Landscape contends the subject invoice was timely paid because it was paid within 30 days of November 2, the date it was first received by Landscape's counsel.

---

[5] All statutory references are to the Code of Civil Procedure unless otherwise noted.

**IV. Lopez Successfully Moves the Superior Court For a Determination Landscape Was in Material Breach of the Arbitration Agreement and For Monetary Sanctions**

On November 22, Lopez filed a motion for monetary sanctions (sanctions motion) alleging Landscape's material breach of the arbitration agreement under sections 1281.98 and 1281.99 for failure to timely pay the subject invoice. Lopez requested the superior court find Landscape "failed to timely pay initiating fees, thereby waiving arbitration," "retain jurisdiction to hear [Lopez's] entire PAGA action," and award Lopez monetary sanctions in the amount of $19,474.70.

In an order filed January 23, 2023 (sanctions order), the superior court granted Lopez's sanctions motion having found (1) Landscape "failed to pay the arbitration fees necessary for the arbitration to proceed within the 30-day statutory grace period pursuant to … section[] … 1281.98";[6] (2) pursuant to said statute, Landscape's "failure to timely pay its arbitration fees constitutes a material breach of the parties' arbitration agreement that [Landscape] drafted"; (3) Lopez "has elected to withdraw his claim from arbitration and proceed in [the superior c]ourt"; (4) Lopez "is entitled to an award of sanctions against [Landscape] to recover his reasonable attorneys' fees and costs incurred as a result of [Landscape's] breach"; and (5) Lopez's counsel "reasonably incurred costs totaling $77.20 and … attorneys' fees … totaling $3,770.00." Thus, the court granted Lopez's request for attorneys' fees and costs in the amount of $3,777.20.

**V. Landscape Successfully Moved the Superior Court to Stay Its Sanctions Order Pending Appeal**

On January 30, 2023, Landscape moved the superior court to stay its sanctions order pending appeal. The court granted Landscape's stay motion.

On February 2, 2023, Landscape timely appealed the sanctions order.

---

[6] Although Lopez argued Landscape breached the arbitration agreement under both sections 1281.97 and 1281.98, and the superior court cited both statutes in its sanctions order, Lopez concedes the initial payment was timely made by Landscape and states section 1281.97 "is not at issue in this appeal."

## DISCUSSION

### I.      Landscape's Contentions on Appeal

The main thrust of Landscape's argument on appeal is that Lopez did not meet his burden of proof to demonstrate Landscape materially breached the parties' arbitration agreement and, therefore, the sanctions order should be reversed.  Landscape further contends the manner in which JAMS allegedly sent the subject invoice to the parties does not comply with subdivision (a)(2) of section 1281.98.  Landscape argues the evidence in the record affirmatively demonstrates it timely paid the subject invoice within 30 days of November 2, the date Landscape first received the invoice.  Landscape posits "if [its] counsel never received the invoice on October 13, … the due date [for payment] did not commence to run from that date."  As discussed below, Landscape's argument that Lopez did not meet his burden of proof in bringing the sanctions motion has merit.

### II.     Standard of Review

The parties disagree on the applicable standard of review on appeal.  Landscape contends this court's review is de novo "because it is the functional equivalent of an order denying a petition to compel arbitration," citing *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 632–633 & fn. 4 (*Gallo*) and *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 749–750 (*De Leon*).  Landscape also argues de novo review is proper because "application of law turns on undisputed facts," citing *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912.

Lopez agrees de novo review is appropriate where a question of law is presented, but contends "[t]his case involves a disputed factual issue over whether … JAMS sent the [subject] invoice to Landscape's counsel on October 13" and, therefore, the sanctions order must be affirmed if supported by substantial evidence, citing, among other cases, *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.

"Ordinarily, a trial court's determination that a party waived the right to arbitrate is subject to substantial evidence review."  (*De Leon, supra*, 85 Cal.App.5th at p. 749.)

The court in *De Leon* departed from this rule because the factual support for the trial court's rulings were undisputed. (*Ibid.*) Similarly, the court in *Gallo* applied a de novo review "because the propriety of the order [determining waiver of the right to arbitrate] rest[ed] on questions of federal preemption as well as the application of undisputed facts to the law …." (*Gallo, supra*, 81 Cal.App.5th at p. 633.)

"Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that … the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial" proof of the essentials which the law requires in a particular case.'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.)

Although certain factual issues are undisputed (e.g., Landscape's payment of the subject invoice on or about November 22), the sanctions order turned primarily on the superior court's resolution of two disputed and interrelated factual issues—whether JAMS sent the subject invoice to Landscape on October 13, and whether Landscape received the subject invoice on October 13. These are historical facts, the resolution of which we review for substantial evidence. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

## III.  Applicable Law

### A.  *Section 1281.98*

Section 1281.98, a part of the California Arbitration Act (§ 1280 et seq.) (CAA), provides, in part, as follows:

9.

"(a)  [¶]  (1)   In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach.

"(2)    The arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of the parties to the arbitration.  The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day.  To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt.  Any extension of time for the due date shall be agreed upon by all parties.…"  (§ 1281.98, subd. (a).)

"The Legislature enacted section 1281.98 … to curb a particular arbitration abuse. The abuse was that a defendant could force a case into arbitration but, once there, could refuse to pay the arbitration fees, thus effectively stalling the matter and stymying the plaintiff's effort to obtain relief."  (*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1076.)  "[T]he legislative history [of section 1281.98] indicates the California Legislature sought a clear and unambiguous rule for courts to apply in determining whether late payment of arbitration fees by a drafting party constituted a material breach of an arbitration agreement."  (*De Leon, supra*, 85 Cal.App.5th at p. 756.)

As originally enacted, section 1281.98 did not include subdivision (a)(2).  (Stats. 2019, ch. 870, § 5)  In 2021, the Legislature enacted Senate Bill No. 762 (2021–2022 Reg. Sess.) (Senate Bill 762), which amended section 1281.98 by adding subdivision (a)(2) to the statute effective January 1, 2022.  (§ 1281.98, subd. (a)(2).)  An analysis of Senate Bill 762 performed by the Office of Senate Floor Analysis reads, in part, as follows:

"To ensure that consumers and employees are not unfairly prejudiced when businesses and employers delay arbitrations by failing to timely pay arbitration fees, existing law grants consumers and employees certain rights when the drafting business or employer is delinquent in making an arbitration fee payment necessary for the arbitration to go forward. When a business or employer is more than 30 days past due on an arbitration payment, the business or employer is considered in material breach of the arbitration agreement, and the consumer or employee may elect to proceed with the arbitration or bring the case in court….

"Existing law does not, however, impose any requirements on when an arbitrator must send invoices or whether and how the payment's due date must be disclosed. This gives rise to a question as to when a business or employer is actually past due on a payment, which in turn causes ambiguity as to when a business or employer is 30 days late and therefore in material breach of the arbitration agreement. According to the sponsor, the California Employment Lawyers Association, some employers have used this lacuna to their advantage by, for example, receiving undisclosed payment extensions, with the purpose of delaying arbitration proceedings despite the protections provided to consumers and businesses under the law.

"This bill closes the gap in current law by establishing clear guidelines for when an arbitrator must send an invoice, as well as requiring the invoice to contain the total amount due and the due date. This bill further provides that, where an arbitration agreement does not establish a time frame for paying an arbitration invoice, the payment is due upon receipt…." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 2, fns. omitted.)

The need for the above referenced amendment to section 1281.98 was further discussed in another analysis of Senate Bill 762, in part, as follows:

"This virtuous and generally non-controversial bill seeks to close a potential loophole in [section 1281.98] …. In the wake of recent litigation surrounding [section 1281.98], it has become clear that additional statutory clarity regarding the timing of when arbitration fees are 'due' would be helpful to ensure that drafting parties could not exploit the ambiguity in the law to delay paying for and conducting arbitration, thereby leaving plaintiffs without a legal remedy…. Therefore, this bill provides for a clear start date for the 30-day timeline for paying arbitration fees." (Assem.

11.

Com. on Judiciary, Analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 1, italics omitted.)

**B.       *Absent an Agreement Otherwise, the 30-day Grace Period For Payment of Arbitration Fees Established By Section 1281.98 Commences Upon the Drafting Party's Receipt of a Fee Invoice***

Lopez contends "[t]he obligations imposed by the law on a drafting party like Landscape are triggered by the 'sending', not by the reading of the invoice by the drafting party," citing subdivision (a)(2) of section 1281.98.  Whereas the second clause of the contention is correct (see, e.g., *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 777 [rejecting inadvertence and clerical error as a defense to nonpayment]), the first clause of the contention is incorrect.

"The proper interpretation of a statute is a question of law, which we determine independently, or de novo." (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 42)  "'As in any case involving statutory interpretation, our fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]'  [Citation.]  '[W]e must look first to the words of the statute because they are the most reliable indicator of legislative intent.  [Citation.]  If the statutory language is clear and unambiguous, the plain meaning of the statute governs.'" (*De Leon, supra*, 85 Cal.App.5th at p. 750.)

On the issue of payment, the language of section 1281.98 is clear and unambiguous.  Payment of an arbitration invoice by a drafting party is *not* required by the statute upon the *sending* of the invoice.  Rather, payment must be made "within 30 days after the due date" of the invoice.  (*Id.*, subd. (a)(1).)  Absent an agreement otherwise, section 1281. 98 further requires the invoice be made "due upon receipt."  (*Id.*, subd. (a)(2).)  Thus, even though proof an invoice was sent in some instances, creates a

rebuttable presumption it was received,[7] it is the receipt—not the sending—of the invoice that triggers a party's statutory obligation to pay within 30 days.  Had the Legislature intended payment to be due upon the "sending" of an arbitration invoice, it could have easily so provided.

The term "receipt," as used in the context of section 1281.98, is not subject to varying interpretations.  Webster's defines the term "receipt" as "[a]n act of receiving something" (Webster's II New College Dict. (1995) p. 924, col. 2), "[t]he fact of being received" (*ibid*.) and "[t]he act or process of receiving" (Webster's 3d New Internat. Dict. (1986) p. 1894, col. 1).  The American Heritage Dictionary defines the term "receipt" as "[t]he act of receiving or being received."  (American Heritage Dict. (4th ed. 2001) p. 699, col. 1.)  In a legal context, the term "receipt" is defined in a substantively identical manner.  Specifically, Black's Law Dictionary defines the term as "The act of receiving something" and provides the following usage example, "<my receipt of the document was delayed by two days>."  (Black's Law Dict. (9th ed. 2009) p. 1382, col. 1.)

Except for Black's Law Dictionary, the above dictionaries provide the following relevant definitions for the term "receive":[8]  "To acquire or take (something given, offered, or transmitted) ….  To take in or hold …."  (Webster's II New College Dict. (1995) p. 924 col. 2, p. 925, col. 1); "To take or acquire (something given, offered, or transmitted)" (American Heritage Dict. (4th ed. 2001) p. 699, col. 1.); and "to take possession or delivery of" (Webster's 3d New Internat. Dict. (1986) p. 1894, col. 1).

---

**7**    See, e.g., Evidence Code section 641 ("A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail."); Code of Civil Procedure section 1020, subdivision (a) (rebuttable presumption of receipt of registered mail upon "production of a returned receipt purporting to be signed by the addressee"); *In re Cavanaugh* (1965) 234 Cal.App.2d 316, 320 (service by mail "in the manner described in … section 1013, is presumed to have been received").  The foregoing presumptions are rebuttable.  (*In re Cavanaugh, supra*, at p. 320; *Bear Creek Master Assn. v. Edwards* (2005) 130 Cal.App.4th 1470, 1486; Code Civ. Proc., § 1020; Evid. Code, § 630.)

**8**    Black's Law Dictionary (9th ed. 2009) does not provide a definition for "receive."

"""Every statute and code section should be construed with reference to its purpose and the objects intended to be accomplished by it.  The language will be so interpreted, *if possible*, as to aid the design and intent of the legislature and to effectuate the evident objects and purpose of the law."""  (*Wholesale T. Dealers v. National etc.* (1938) 11 Cal.2d 634, 660, italics added.)  """"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention.  The intent prevails over the letter, and the letter will, *if possible*, be so read as to conform to the spirit of the act."""" (*Rushing v. Powell* (1976) 61 Cal.App.3d 597, 604, italics added.)

The legislative history of subdivision (a)(2) of section 1281.98 indicates the statutory obligation of the arbitration provider to send the invoice "to all parties by the same means on the same day" was intended to reduce (or possibly eliminate) disputes over whether a drafting party received an arbitration invoice on a given date, and to enable all parties to know when payment is due.  Notwithstanding, the language of section 1281.98 is not sufficiently flexible to enable us to interpret the statute such that the 30-day grace period would commence upon the sending of an arbitration invoice without consideration of whether and when the invoice was received.

Notably, "[t]he law traditionally disfavors forfeitures and statutes imposing them are to be strictly construed." (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906; see Civ. Code, § 1442; *Hernandez v. Temple* (1983) 142 Cal.App.3d 286, 290; *People v. Resolute Ins. Co.* (1975) 50 Cal.App.3d 433, 435.)  Our construction of section 1281.98 is consistent with this principle.  The statutory construction urged by Lopez is a more liberal construction of section 1281.98, which, if adopted, would result in a forfeiture of Landscape's right to arbitrate in violation of the principle.  Finally, although our construction of subdivision (a)(2) of section 1281.98 leaves room for a party to assert it did not receive an arbitration invoice to counter evidence of a material breach

14.

of an arbitration agreement due to untimely payment, our construction remains consistent with the Legislature's intent to reduce (and possibly eliminate) such disputes.[9]

As discussed, and absent an agreement among the parties otherwise, section 1281.98, subdivision (a), provides that an arbitration invoice shall be issued as "due on receipt," and that payment of the invoice must be made "within 30 days after the due date." The clear and unambiguous text of the statute provides the 30-day grace period for payment will commence *once the invoice is received*—i.e., once the drafting party comes into possession of the invoice. Although evidence that an arbitration invoice was sent is relevant to the question of whether and when it was received, we reject the *categorical* contention that the mere sending of the invoice commences the running of the 30-day grace period.

## IV. Substantial Evidence Does Not Support a Finding That Landscape's Payment of the Subject Invoice Was Untimely

### A. *Lopez Bore the Burden of Proof to Demonstrate Landscape's Payment of the Subject Invoice Was Untimely*

Under section 1281.98, Landscape, as the party that drafted the arbitration agreement, was required to pay the subject invoice "within 30 days after the due date" to avoid being in material breach of the arbitration agreement. (*Id.*, subd. (a)(1).)[10] On

---

[9] Courts have described the 30-day grace period as "establish[ing] a clear-cut rule for determining if a drafting party is in material breach of an arbitration agreement" (*De Leon, supra*, 85 Cal.App.5th at p. 755) and as "'establish[ing] a simple bright-line rule that a [company's] failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement.'" (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 359, quoting *De Leon, supra*, at p. 753.) While we agree the 30-day provision of section 1281.98, subdivision (a)(1), lends concreteness to the timing of an obligation to pay an arbitration invoice, the case before us demonstrates that factual situations may complicate calculation of the 30-day grace period. To the extent a more definitive means of determining commencement of the 30-day grace period is desired, it is for the Legislature (and not this court) to design a statutory structure to achieve that goal.

[10] The CAA defines "'[d]rafting party'" as "the company or business that included a predispute arbitration provision in a contract with a consumer or employee. The term includes any third party relying upon, or otherwise subject to the arbitration provision, other than the

15.

appeal, Landscape argues Lopez "failed to meet his burden of proof … to demonstrate that Landscape breached the agreement to arbitrate …." (Boldface and capitalization omitted.) We agree.

"Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) In the context of court compelled arbitration, "[i]f the [employee] elects to proceed in court to … resume litigation [after a material breach of the arbitration agreement], the [employee] must … seek vacatur of a prior order compelling arbitration and staying the litigation …." (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1066.) In its sanctions motion, Lopez did just that. Lopez sought "an order finding that … Landscape … materially breached the arbitration agreement that it drafted by failing to pay fees and costs 'required to continue the arbitration proceeding … within 30 days after the due date,' thereby waiving arbitration." Lopez further sought an award of monetary sanctions under sections 1281.98 and 1281.99. Consequently, in order to obtain the sanctions order, Lopez bore the burden of proving Landscape materially breached the arbitration agreement. Lopez does not argue to the contrary.

As required by subdivision (a)(2) of section 1281.98, the subject invoice stated "[p]ayment is due upon receipt." Thus, in order to meet its burden of proof in the sanctions motion, Lopez necessarily had to produce evidence and persuade the superior court that Landscape received the subject invoice more than 30 days prior to Landscape making payment of the invoice. (*Id.*, subd. (a)(1); Evid. Code, §§ 115, 500.)

---

employee or consumer." (§ 1280, subd. (e).) The parties do not dispute that Landscape is the "'[d]rafting party'" as defined in CAA.

### B.      Evidence Proffered in Support of Lopez's Sanctions Motion

We summarize the relevant evidence Lopez submitted to the superior court in support of his sanctions motion below.[11]

### 1.      *JAMS's September 22 Notice of Commencement and Related Documents*

In a declaration, Lopez's counsel stated, "On September 22, … JAMS served the Notice of Commencement [of arbitration] through JAMS online portal, JAMS Access, to which all of the parties have access."  In support of that statement, Lopez's counsel attached as an exhibit to his declaration a copy of a September 22 email sent to counsel for both parties that read, in relevant part:  "Dear Parties, [¶] Attached is a courtesy copy of the Notice of Commencement just filed today in JAMS Access."  A pdf copy of the notice of commencement was attached to the email and included the notation near the top of the document:  "NOTICE TO ALL PARTIES."  The notice of commencement briefly discussed the process for selecting arbitrators and, among other things, stated, "The Arbitrator shall bill in accordance with his/her current Fee Schedule."

The fee schedule for the arbitrator ultimately selected by the parties was included with the notice of commencement and contained an information section titled "Cancellation/Continuance Policy" (some capitalization and boldface omitted) under which was written, in relevant part:  "All fees are due and payable in advance of services rendered and by any applicable due date as stated in a hearing confirmation letter."  Also included with the notice of commencement was a document titled "JAMS Arbitration Administrative Policies" (some capitalization and boldface omitted), which read, in part: "The Parties and their attorneys agree to pay JAMS for the arbitration as set forth in the

---

**11**      Lopez's counsel submitted additional evidence to provide the superior court with contextual facts and procedural information.  We have already stated those facts in our discussion of the factual and procedural background and do not repeat them here.

Fee and Cancelation Policy attached to and incorporated in this Agreement"—i.e., the Cancellation/Continuance Policy referenced in this paragraph.**12**

Landscape acknowledged the receipt of these September 22 communications and attachments. However, Landscape's counsel stated he received the documents by email—not by logging into JAMS Access.

### 2. *JAMS's October 13 Notice of Appointment and Related Attachment*

Lopez's counsel also stated, "On October 13, … JAMS issued a notice to the parties appointing Joel Grossman as the arbitrator. Attached as [an] Exhibit is a true and correct copy of the [notice of appointment] … and all attachments enclosed with the notice dated October 13 .…"

As with the notice of commencement, the notice of appointment included the notation "NOTICE TO ALL PARTIES," advised the parties that their selected arbitrator had been appointed to the case, and stated, in part: "The paying party has been billed a preliminary deposit to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls. An invoice for this deposit is attached. Payment is due upon receipt." The subject invoice was uploaded to JAMS's online portal along with, and attached to, the notice of appointment.

### 3. *Subsequent Communications Between Counsel and JAMS*

Lopez's counsel stated he received the November 2 follow-up email from JAMS in which JAMS's case coordinator stated, in part: "I am following up on the initial retainer payment for the above referenced matter. JAMS has yet to receive payment for initial retainer from [Landscape]. I have attached a copy of the [subject invoice] for your consideration. Please submit payment as soon as possible .…" Lopez's counsel averred

---

**12** We presume the fee and cancelation policy mentioned in the JAMS arbitration administrative policies is a reference to the cancellation/continuance policy included in the arbitrator's fee schedule. No separate document titled, or containing a subheading titled, "Fee and Cancelation Policy" is included in the record on appeal.

18.

the attachments to the email included a copy of the subject invoice, wire payment instructions, and a W-9 form for JAMS.

Lopez's counsel also stated he received the November 10 follow-up email from JAMS in which JAMS's case coordinator stated, "At your earliest convenience, can you please provide me with the status of payment for the initial retainer regarding the [*Lopez v. Landscape*] matter?"

Lopez's counsel further stated he contacted JAMS on November 17 and "confirmed that [Landscape] had still not paid the outstanding balance and, therefore, [the case coordinator] still could not schedule the Preliminary Arbitration Management Conference Call."

Finally, Lopez's counsel stated he notified JAMS and Landscape's counsel by email on November 21 of Lopez's decision to withdraw his claims from arbitration and pursue them in the superior court. Attached to Lopez's counsel's declaration was an email stream that included the email notifying of Lopez's withdrawal from the arbitration and emails containing back-and-forth discussions between the parties' counsel concerning their disagreement over whether Lopez had the right to withdraw from the arbitration.

### C. *Landscape's Evidence in Opposition to the Sanctions Motion*

Landscape's counsel submitted a declaration and exhibits in opposition to the sanctions motion. In his declaration, Landscape's counsel acknowledged receiving the notice of commencement and related attachments *by email*.

Landscape's counsel also acknowledged receiving the November 2 and November 10 follow-up emails from JAMS indicating it was still awaiting payment of the subject invoice. Counsel stated he received a copy of the subject invoice as part of the November 2 email and averred, "[t]his was [the] first time I received the [subject invoice] for the arbitrator's fee."

19.

In his declaration, Landscape's counsel discusses his communications with JAMS and opposing counsel concerning his contention and objection that the subject invoice was improperly billed to his firm rather than to Landscape.

Landscape's counsel also averred that, on November 22, he "asked JAMS to send the email or communication by which the disputed [subject invoice] was sent to [Landscape]," but stated, "JAMS has not provided any evidence that the [subject invoice] was sent to [Landscape] or [his] firm .…"  He also stated he "verified the [subject] invoice was not received by any Department of [his] firm" or his firm's Las Vegas, Nevada office.

### D.    *Lopez's Supplemental Evidence in Reply to Landscape's Opposition*

In a supplemental declaration, Lopez's counsel stated, "when JAMS had a new notification, [it] sent an email to the Parties with the subject matter 'JAMS Access New Notifications'.  The email stated:  'Here are all of the new Notifications within JAMS Access.  Click here to login to JAMS Access to see the Notifications.'  Below that message was a box containing the name of the new document that JAMS had uploaded to the case file for the arbitration with a hyperlink to take the recipient to the document in JAMS Access, JAMS' online portal.  Accordingly, any new document was not attached to the email; instead, it was accessible through the link in the email.…  The email from JAMS with the hyperlink to the 'Notice of Appointment' (to which the [subject invoice] was attached) was sent to me [i.e., Lopez's counsel] on October 13 .…"

Lopez's counsel attached the JAMS Access notification email as an exhibit to his declaration and stated, "This email was typical of other emails that JAMS sent to the Parties in the arbitration, including the invoice for [Lopez's] initial filing fee."  To illustrate this latter point, Lopez's counsel included additional exhibits to his supplemental declaration, consisting of other email notifications he received from JAMS Access.  Each of these additional exhibits were addressed only to Lopez's counsel's email address (not to Landscape's counsel) and contained the following greeting and,

20.

without limitation, the following text: "Dear [counsel for Lopez], [¶] Here are all of the new Notifications within JAMS Access. Click here to login to JAMS Access to see the Notifications."

### E.    Supplemental Declaration of Landscape's Counsel

Landscape's counsel filed a supplemental declaration after Lopez filed his reply paperwork in support of the sanctions motion. In it, counsel discusses the various efforts he and others in his firm took to determine whether the subject invoice was received at the firm's Los Angeles and Las Vegas offices, as well as the firm's accounting department. Lopez objects to our consideration of the supplemental declaration on grounds there is no authority for a party to file a supplemental pleading absent leave of court. The supplemental declaration is not necessary to our resolution of the issues presented on appeal. We sustain Lopez's objection and do not consider Landscape's supplemental declaration.

### F.    Analysis

We first clarify how we view certain contentions made by Lopez in the court below and on appeal. For example, Lopez contends "JAMS served the 'Notice of Commencement' through JAMS online portal, JAMS Access, to which all of the parties were given access." We view Lopez's phrase "JAMS served the 'Notice of Commencement'" merely as an indication that the notice of commencement was uploaded to the JAMS Access portal. If Lopez intended the phrase to suggest that *valid* service of the notice was made upon the parties, the statement is a conclusion and is unsupported. Second, we interpret the phrase "to which all of the parties were given access" as a statement that JAMS Access is a service available to all parties. If the statement was meant to suggest that all parties signed up for the JAMS Access service, there is no evidence in the record on appeal to support the suggestion.

Similarly, the statement that other JAMS Access email notifications were "typical of other emails that JAMS sent to the Parties" is unsupported to the extent the term

21.

"Parties" was intended to include Landscape.  Each of the JAMS Access email notifications submitted by Lopez in support of the sanctions motion was addressed solely to Lopez's counsel.  While we may suppose that each party (or counsel) that had signed up for the JAMS Access service would receive an individualized email as Lopez's counsel received, there is no evidence in the record, substantial or otherwise, that Landscape was sent the JAMS Access email notification, that Landscape received the email, that Landscape or its counsel signed up for the JAMS Access service, or that would support an inference (or presumption) of any of these alleged facts.**13**

On appeal, Lopez argues "the attorneys for Landscape submitted no declaration in support of Landscape's Opposition [to the sanctions motion] to refute the inference that they were signed up for JAMS Access and received the October 13 … Notice [of appointment] with [the subject] invoice."  "'[T]he burden of producing evidence as to a particular fact rests on the party with the burden of proof as to that fact.  [Citations.]  If that party fails to produce sufficient evidence to make a prima facie case, it risks nonsuit or other unfavorable determination.  [Citations.]  But once that party produces evidence sufficient to make its prima facie case, the burden of producing evidence *shifts* to the other party to refute the prima facie case.'"  (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 436; see Evid. Code, § 110.)  Having found no substantial evidence to support a finding that Landscape was either sent, or received, the October 13 JAMS Access email notification (or, for that matter, that Landscape or its counsel had signed up for the JAMS Access service), the burden did not shift to Landscape to "introduce evidence sufficient to avoid a ruling against [it] on the

---

**13**     Lopez argues the use of the term "'courtesy copy'" in JAMS's September 22 email to describe the attached notice of commencement put the parties on notice "that the official documents and notifications in the arbitration would be 'filed' on JAMS Access."  Lopez notes the email also invited the parties to sign up for the JAMS Access service.  The argument does not aid Lopez.  The September 22 email does not, in any way, show or support an inference that the October 13 JAMS Access email notification or subject invoice were sent to, or received by, Landscape, or even that Landscape signed up for the JAMS Access service.

issue." (Evid. Code § 110; accord, *California Farm Bureau, supra*, at p. 436.) Thus, Landscape was not required to refute Lopez's contentions in order to avoid an unfavorable ruling on the sanctions motion.[14]

In summary, we conclude Lopez did not meet his burden of demonstrating Landscape materially breached the arbitration agreement.

## V. Even Assuming, Arguendo, Landscape's Receipt of the JAMS Access Email Notification, Our Decision Would Be the Same[15]

For reasons explained below, even if we were to assume, for argument's sake only, that a JAMS Access email notification (similar to the one sent to Lopez's counsel) was likewise sent to Landscape's counsel—an assumption not warranted by the record on appeal—we would still conclude there is insufficient evidence upon which to find Landscape in material breach of the arbitration agreement under section 1281.98.

The notice of commencement that was received by the parties prior to the notice of appointment stated, "The Arbitrator shall bill in accordance with his/her current Fee Schedule." The fee schedule for the arbitrator appointed in this matter reads, in part: "A deposit request for anticipated preparation and follow-up time will be billed to the

---

**14** Evidence of whether Landscape signed up for the JAMS Access service was not evidence solely in the possession of Landscape. Such evidence could have been obtained from JAMS itself. Consequently, this is not a situation where fairness would dictate that Landscape bear the burden of proof on this issue. (See *Sanchez v. Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 71 ["'Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim.'"].) Even if we were to assume the evidence would have been easier for Landscape to produce than for Lopez to obtain from JAMS—itself, a speculative proposition—"'[g]reater access to relevant evidence does not mandate that a defendant bear the burden of proof on the issue.'" (*Sander/Moses Productions, Inc. v. NBC Studios, Inc.* (2006) 142 Cal.App.4th 1086, 1097.)

**15** Nothing in this opinion should be construed to suggest the court is adverse to the use of emails or hyperlinks, in appropriate circumstances, to provide parties to an arbitration with notice that arbitration fees are due. The widespread use of emails and hyperlinks greatly facilitates modern day comminications. In determining whether applicable notice and service requirements have been met, each case must be analyzed on its own facts and the law.

parties.… [¶…¶] All fees are due and payable in advance of services rendered and by any applicable due date as stated *in a hearing confirmation letter*.…" (Italics added.) In reviewing the notice of appointment and JAMS Access email notification, we observe the email notification only provided a link to a document titled "Notice of Appointment." It did not purport to provide a link to the subject invoice or to a hearing confirmation letter. We also note the means by which JAMS sent the subject invoice to Lopez's counsel was a significant departure from its prior method of transmitting the initial deposit request invoice to Landscape. Specifically, Landscape received the initial deposit request invoice for $1,350 by email from JAMS's billing administrator with a copy of the invoice clearly identified and attached to the email itself. Even assuming for argument's sake only that Landscape received the JAMS Access email notification, nothing therein, or in JAMS's prior practice, would have alerted Landscape to the fact that the subject invoice was attached to the notice of appointment referenced in the email.

A party receiving such a JAMS Access email notification without also receiving some indication that an arbitration invoice was (or might be) included in the email, could not fairly be said to be in receipt of the invoice (as envisioned by § 1281.98)—at least until such time as they actually logged into JAMS Access, obtained the notice of appointment, and, thereby, discovered the attached subject invoice.[16] To conclude otherwise would result in Landscape's forfeiture of the right to arbitrate despite never having been on notice that the subject invoice was transmitted to it.[17]

---

[16] At oral argument, Lopez's counsel analogized the situation to that of a person who receives a notice by mail, neglects to open the envelope in which it is enclosed, and then argues the notice was never received. The analogy fails because, as discussed previously, there is no evidence in the record on appeal that the JAMS Access email notification (i.e., the "envelope" in counsel's analogy) was ever sent to, or received by, Landscape.

[17] We acknowledge Lopez's point that Landscape could have avoided the sanctions motion and this appeal by operating off the assumption it should pay the subject invoice within 30 days of the date of the subject invoice. However, for reasons discussed herein, Lopez failed to demonstrate that Landscape was under a legal obligation to do so.

24.

**VI.    Lopez's Motion Requesting This Court Take Evidence on Appeal is Denied**

Lopez, as part of his response to Landscape's primary argument on appeal, moved this court to take evidence pursuant to section 909 and California Rules of Court, rule 8.252(c).  Lopez seeks a finding that JAMS issued a proof of service that "conclusively establishes that the Notice of Appointment and the attached [subject] invoice was 'sent to all parties by the same means on the same day' by JAMS on October 13, … in compliance with … [section] 1281.98[, subdivision ](a)(1)."  A copy of the proof of service was submitted with Lopez's motion.  We deferred ruling on the motion pending consideration of the appeal on its merits.  We now deny the motion.

Section 909 authorizes a reviewing court to take evidence and "make factual determinations contrary to or in addition to those made by the trial court" in "all cases where trial by jury is not a matter of right .…"  "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'  [Citation.]  This rule reflects an 'essential distinction between the trial and the appellate court … that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law .…'  [Citation.]  The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal.  'Although appellate courts are authorized to make findings of fact on appeal …, the authority should be exercised sparingly.  [Citation.]  Absent exceptional circumstances, no such findings should be made.'"  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted.)

First, there is no reason the proffered proof of service could not have been presented to the superior court in connection with the sanctions motion.  Lopez's argument he did not submit the proof of service to the court below because Landscape did not argue to the court that it did not receive the JAMS Access notification, or that

there was "no proof of service" attached to the notice of appointment, is not persuasive. As discussed above, Lopez bore the burden of demonstrating Landscape's receipt of the subject invoice in order to show payment was untimely. A proof of service is an obvious piece of evidence relevant to that issue.

Moreover, it was clear from the tenor of Landscape's opposition to the sanctions motion that Landscape contended it did not receive the JAMS Access email notification on October 13, and first received the subject invoice on November 2. In response, Lopez's counsel filed a supplemental declaration to demonstrate to the superior court why it should not give credence to Landscape's contention. Lopez does not adequately explain why the proof of service was not submitted with his counsel's supplemental declaration. "It is true, of course, that '[t]he general rule of motion practice … is that new evidence is not permitted with reply papers.' [Citation.] However, a recognized exception is for points 'strictly responsive' to arguments made for the first time in the opposition." (*Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 774.) We conclude there is no good cause to accept the new evidence on appeal.

Next, the proffered proof of service does not conclusively establish the subject invoice was served upon Landscape through JAMS Access. We first note that even where a proof of service is in proper form, it only creates a *rebuttable* presumption of proper service. (*Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 795) Here, however, the proof of service is not in a sufficient form to either prove, or create a rebuttable presumption, that the subject invoice was sent or received. Generally, a proof of service must be in the form of an affidavit or qualifying certificate of service. (§§ 1010.6, subd. (e)(2), 1013a, 1013b, subds. (a), (c), 2003.) The proffered proof of service does not meet either of these criteria. In addition, a proof of service must contain the exact title of the document served. (§§ 1010.6, subd. (a)(1)(C), 1013a, 1013b, subd. (a).) The proffered proof of service only states the "Notice of Appointment.pdf" was uploaded to the portal and that "[a]n email notification [of the upload] has been sent"

26.

to the parties' counsel. It does not state, or otherwise give notice, the *subject invoice* was uploaded to the portal.

Accordingly, we deny the motion to take new evidence and do not make the finding requested by Lopez.

## DISPOSITION

The superior court's January 23, 2023, order finding Landscape in material breach of the parties' arbitration agreement, authorizing the withdrawal of Lopez's claim from arbitration, and awarding Lopez monetary sanctions in the amount of $3,770, is reversed. Costs on appeal are awarded to Landscape (Cal. Rules of Court, rule 8.278(a)(2)).[18]

MEEHAN, J.

WE CONCUR:

LEVY, Acting P. J.

FRANSON, J.

---

[18] In light of our disposition, it is unnecessary for us to consider Landscape's additional arguments on appeal.